Dean Lloyd , Bar No. 104647
Law Offices of Dean Lloyd
445 Sherman Ave, Suite I
Menlo Park, California 94306
Telephone: (650) 328-1664
Fax: (650) 328-9212


Attorney for Plaintiffs/Debtors,
Mosese Uhila and Mele Feofaaki Uhila

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: Mosese Uhila and Mele Feofaaki Uhila, | Bankruptcy Case No. 10-31355 |
| Debtors, | Adv. No. |
| MOSESE UHILA AND MELE FEOFAAKI UHILA, | COMPLAINT TO SET ASIDE FORECLOSURE |
| Plaintiff, | Judge: Honorable Dennis Montali |
| vs. OCWEN LOAN SERVICING, LLC; DEUTSCHE BANK NATIONAL TRUST COMPANY; WESTERN PROGRESSIVE, LLC, their successors and assignees. and DOES 1 - 20 Defendants. | |

COMPLAINT to SET ASIDE FORECLOSURE

Case 10-03090  Doc# 1  Filed: 06/02/10  Entered: 06/02/10 17:53:07  Page 1 of 10

1

For the complaint against the above-named Defendants, Plaintiff MOSESE UHILA a.k.a. MOSES UHILA, and MELE FEOFAAKI UHILA, (hereinafter referred to as "Plaintiffs") alleges as follows:

PARTIES

1. Plaintiffs MOSESE UHILA and MELE FEOFAAKI UHILA are residents of the City of East Palo Alto, County of San Mateo, State of California. Plaintiffs are also the debtor in a voluntary Chapter 13 bankruptcy proceeding, filed on April 16, 2010.

2. Plaintiffs are informed and believe, and upon that basis allege that defendant OCWEN LOAN SERVICING, LLC ("Ocwen") is, and at all times herein mentioned was, a corporation incorporated in the State of Delaware and licensed to do business in the State of California.

3. Plaintiffs are informed and believe, and upon that basis allege that defendant DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for the Registered Holders of Harborview Mortgage Loan Trust Mortgage Pass Through Certificates, Series 2007-7 ("Deutsche Bank"), form unknown, is the Trustee for the Harborview Mortgage Loan Trust Mortgage Pass Through Certificates, Series 2007-7. The Harborview Loan Trust is the alleged beneficiary of the Deed of Trust at issue.

4. Plaintiffs are informed and believe, and upon that basis allege that defendant WESTERN PROGRESSIVE, LLC ("Western Progressive") is, and at all times herein mentioned was, a corporation incorporated in the State of Delaware and licensed to do business in the State of California.

5. The true names and capacities of defendants named as DOES 1 through 20 are unknown to plaintiffs, and plaintiffs therefore sue said defendants by such fictitious names and ask leave of this court to allow this Complaint to be amended to insert the true names and capacities of such

defendants when they become known. Plaintiffs are informed and believe and on that ground allege that the fictitiously named defendants herein, and each of them, claims an interest in the property hereinafter described and which is the subject of this action.

## JURISDICTION

6. Plaintiffs have standing to bring this action under Title 11 of the United States Code §§547(b) and 548(a) et seq.

7. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1409(c). This adversary proceeding arises in the captioned bankruptcy case now pending in this court.

8. This adversary proceeding is brought pursuant to Bankruptcy Rule 7001, and Title 11 U.S.C. §§ 547(b) and 548(a). This is a "core proceeding" under 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(B) and 157(b)(2)(K).

## STATEMENT OF FACTS

9. On December, 2, 2003 the Plaintiff, Mosese Uhila purchased a home at 2245 Euclid Ave, East Palo Alto, California (the "Property").

10. Plaintiffs refinanced the Property on February, 6, 2006 in the name of both Plaintiffs. New Century Mortgage Corporation was the lender on the 2006 loan. The loan appears to have been transferred to the Harborview Mortgage Loan Trust and Trustee Deutsche Bank.

11. Due to changes in their income and material circumstances Plaintiffs became delinquent on the loan in early 2009.

12. After falling into arrears on their mortgage Plaintiffs began to seek ways to meet their loan commitments. With the help of an interpreter and family members they sought a loan modification from Ocwen, the servicer for the first loan, beginning in September 2009.

13. Ocwen's representatives encouraged the Plaintiffs to seek loan modification, through the Home Affordability Modification Program ("HAMP"), and made verbal representations that the Plaintiffs would be approved for a trial plan and should make a monthly trial payment in the amount of $1,922.51.

14. Despite repeated requests for confirmation of a trial plan based on the representation of the Defendant's agent, Defendant refused to provide any plan, but instead repeatedly reassured Plaintiffs that a trial modification plan would be forthcoming.

15. On October, 9, 2009 Defendants sent a letter requesting additional documents to complete a HAMP application, and Plaintiffs responded by providing these documents.

16. On October 20, 2009 Defendants began foreclosure proceedings against the Plaintiffs, by recording a notice of Trustee Sale. A substitution of Trustee to Defendant Western Progressive LLC, was also made on this date.

17. Agents of Defendant informed Plaintiffs that loan modification paperwork was being processed and instructed them to wait rather than seek other means of preventing foreclosure.

18. The Notice of Trustee's Sale provided for a sale on November 10, 2009, but the Trustee's Deed Upon Sale states that the sale was conducted on December, 1, 2010.

19. Defendant Ocwen continued to send monthly mortgage statements to the Plaintiffs until at least November 17, 2009 after the date of the foreclosure sale provided for by notice.

20. Defendant sent a letter rejecting Plaintiff's loan modification efforts on November 23, 2009, after having begun the foreclosure process and after the date set for foreclosure sale, but

encouraged Plaintiffs to continue to apply for and seek home modification as a means of forestalling foreclosure.

21. Even after the date of the foreclosure Ocwen's representatives continued to indicate that a loan modification was possible and that Plaintiffs could enter into a trial loan modification program beginning in January 2010.

### FIRST CAUSE OF ACTION – FRAUD

22. Plaintiff hereby incorporates paragraphs 1 through 21 into the First Cause of Action as though fully set forth herein.

23. From the period of September to December 2009, agents of defendant, OCWEN LOAN SERVICING, LLC, misrepresented to the Plaintiffs that they were eligible for a loan modification, that Plaintiffs' efforts to seek modification had been successful, and that such efforts had resulted in a trial period modification, which under HAMP would have prevented foreclosure proceedings.

24. The fraudulent representations were made by agents of the Defendant, through Defendant's mortgagor assistance line at 1-800-746-936 (1-800-74OCWEN). The agents were, or claimed to be, employees of Ocwen and represented that they had the power to make loan modification agreements on Ocwen's behalf.

25. Defendant Ocwen's agents falsely and fraudulently represented to Plaintiffs that Plaintiffs were eligible for loan modification, that Plaintiffs had received a trial loan modification and that negotiations for and entrance into the trial modification would forestall foreclosure of the Plaintiffs' home while Defendants finalized a loan modification agreement.

26. When Plaintiffs voiced apprehensions about the impending foreclosure to Defendant's agents, the agents informed them that Plaintiffs had no need for concern. The agents stated that Ocwen had approved or would approve a trial period loan modification agreement and that the modification and modification process acted to forestall foreclosure. On approximately November 5, 2009 an agent of Defendant told Plaintiffs to wait 30 days for Defendant to review Plaintiffs' application, inducing Plaintiffs' to refrain from action until after the foreclosure sale.

27. Defendant and Defendant's agents knew, or should have known, that a modification agreement would not be forthcoming for the Plaintiffs, and instead Defendants had begun foreclosure proceedings. Furthermore Defendant and Defendant's agents knew that during the time Defendant made representations that Plaintiffs were in or could start a trial modification, Defendant had started, and even completed foreclosure proceedings on Plaintiffs' property.

28. The intent of Defendant's misrepresentations was to cause Plaintiffs to believe that foreclosure was not occurring on their property, or had been prevented by Plaintiffs' successful efforts to make a loan modification agreement.

29. Plaintiffs relied on the misrepresentations of Defendants, and did not take action to prevent to foreclosure on their property because they believed that foreclosure was prevented by a HAMP trial modification, and had been falsely led to believe that Defendants had granted them such a modification.

30. As a result of this justified reliance Plaintiffs have suffered damages in the form of the loss of their family home to foreclosure.

## SECOND CAUSE OF ACTION – FORECLOSURE INVALID

31. Plaintiff hereby incorporates paragraphs 1 through 30 into the First Cause of Action as though fully set forth herein.

32. Defendants failed to follow California Civil Code §2924 when they conducted the foreclosure process on the Property.

33. The Notice of Trustee Sale as recorded on October, 20, 2009 provided for a sale on November 10, 2009, but no sale was conducted on that date.

34. A Trustee's sale was allegedly conducted on December 1, 2009 and no notice of this postponement was recorded or provided.

35. As a result of this improper notice the transfer of the property was not conducted as required under California Civil Code § 2924 and should be set aside as unfair and oppressive.

## THIRD CAUSE OF ACTION – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

36. Plaintiff hereby incorporates paragraphs 1 through 35 into the First Cause of Action as though fully set forth herein.

37. Plaintiffs Loan Contract with the Defendants contained an implied covenant of good faith and fair dealing that required Defendants to protect and otherwise care for the Plaintiffs rights and assets. The covenant prohibited Defendants from actions interfering with and contrary to the rights of the Plaintiffs.

38. Defendants actions, in failing to conduct the foreclosure properly and misrepresenting that Plaintiffs received a loan modification that had or would prevent foreclosure interfered with the Plaintiffs rights under their loan contract with New Century Mortgage.

39. The interference violated the Loan Contract's covenant of good faith and fair dealing.

## FOURTH CAUSE OF ACTION – FORECLOSURE ACTION WAS CONTRARY TO PUBLIC POLICY

40. Plaintiff hereby incorporates paragraphs 1 through 39 into the First Cause of Action as though fully set forth herein.

41. Both State and Federal government have repeatedly addressed and sought to remedy and assuage the harms caused by the recent decline in home values throughout the United States and corresponding rise in foreclosures. These recent governmental efforts, such as the "Home Affordability Modification Program" (HAMP) and California's Civil Code § 2923.6 are part of a long history of governmental efforts to regulate the home loan business and prevent abuses that includes such as the laws as the Federal Home Owners' Loan Act of 1933.

42. Recent or long-standing, these governmental regulations and laws were designed to protect home buyers, especially in times of financial difficulty. Defendants misrepresented the nature of the most recent Federal effort to prevent foreclosure with the intent to unjustly aid them in completing a foreclosure, making the substance of the Defendants misrepresentations is especially shocking.

43. The Federal Home Affordability Modification Program (HAMP) was enacted in March 2009 and clarified through Treasury Department Supplemental Directives as part of the Emergency Economic Stabilization Act of 2008, codified in 12 USC §§ 5209 and 5211. The legislative intent of these codes and the program created in response to them is to "maximize assistance for homeowners and use the authority of the Secretary to encourage the servicers of the underlying mortgages … to minimize foreclosures." 12 USC § 5211.

44. On July, 8, 2008 The California Legislature enacted § 2923.6 of the California Civil Code.  Section 2923.6 states that a mortgage servicer must act in the best interests of all investors in and parties to a mortgage pool and that a"[mortgage] servicer acts in the best interests of all parties to the loan pool or investors in the pooling and servicing agreement if it agrees to or implements a loan modification or workout plan."  As described in SB 1137, passed on July 2, 2009, the legislative intent of the code was to "avoid unnecessary foreclosures of residential properties … by facilitating the modification and restructuring of loans."

45.  The Federal "Home Owners' Loan Act of 1933", like California Civil Code § 2923.6 was enacted "solely for the benefit of home owners who were in financial difficulties." See Morrison v. Landers,  56 Cal.App.2d 60, 7(1 Dist.1943).

46. None of these purposes can be served by allowing the mortgage servicers and lenders to make misleading promises and deceptive assurances with the goal or effect of limiting mortgagor's response to foreclosure proceedings.  The actions of the Defendants were predatory and made only to ease the foreclosure process by inducing the plaintiffs not to act to protect themselves from foreclosure.

47.  That Defendants' misrepresentations were presented as part of the federal Home Affordablity Modification Program (HAMP), makes them especially egregious.  Some of Defendants' actions are now explicitly disallowed under HAMP guidelines.

48.  When Ocwen continued the foreclosure actions while simultaneously offering to work with Plaintiffs on a HAMP based loan modification, it failed to follow the programs guidelines. Ocwen's November 23, 2009 denial of the Plaintiff's HAMP modification listed only that Plaintiff's had a "gross income less than the monthly payments determined by government guidelines" as a justification for denial.  The justification is inconsistent with program

guidelines, as debtors' income determines HAMP payment amounts, and the program itself sets no minimum payment guidelines. Furthermore, Ocwen's letter of November 23, 2009 fails to reject the Plaintiff's loan modification request for a reason recognized as legitimate by the HAMP Supplemental Directive 09-06, p.14, Schedule IV.

49. Ocwen's overt failure to work within the guidelines of the HAMP program, shows a lack of good faith on the Defendant's part.

50. Defendant's actions: of encouraging the Plaintiffs to seek loan modification, soliciting loan modification information, and claiming that the Plaintiffs had received a modification while simultaneously foreclosing on the same loan are against the public interest and intent of the Federal and State government's efforts to prevent foreclosures.

**Prayer**

WHEREFORE, plaintiff prays for Judgment as follows:

1. That the court cancel the Trustee's Deed Upon Sale dated December 1, 2009, and declare the transfer of the subject property of plaintiff to defendants as null and void.
2. For attorney's fees pursuant to the parties' agreement;
3. For costs of this suit; and
4. For such other and further relief as the court deems just and proper.

Respectfully Submitted,

Dated: June 2, 2010    Law Offices of Dean Lloyd


By /s/Dean Lloyd
Dean Lloyd
Attorney for Plaintiff